**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**ROBERT LAMB and MARILYN LAMB**,

Plaintiffs,

v.

**SOUTH DENVER CARDIOLOGY ASSOCIATES, P.C.,**

Defendant.

---

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiffs Robert Lamb and Marilyn Lamb ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendant South Denver Cardiology Associates, P.C. ("SDCA" or "Defendant") and make the following allegations based upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      SDCA is a comprehensive cardiology health provider "delivering the highest quality cardiac care to adults in the [Denver] region."[1]  SDCA provides a "full range of cardiac services" including preventative care, diagnostic testing, electrophysiology, coronary intervention, cardiac rehabilitation, heart failure care, and structural heart and valve procedures.[2]

2.      As part of its business in providing health care, SDCA collects from its patients, among other things, name, date of birth, Social Security number, driver's license number, patient account number, health insurance information, and clinical information, such as physician name, date and type of service, and diagnosis.

3.      SDCA touts that it is "committed to respecting and protecting your privacy" and that "personally identifiable information…is not shared with any organization for any purpose."[3] However, according to news reports, on January 4, 2022, SDCA became aware of unusual network activity, and an investigation determined hackers had access to certain systems from January 2,

---

[1] *See* https://southdenver.com/mission-vision/ (last visited date).

[2] *See* https://southdenver.com/cardiac-services/ (last visited date).

[3] *See* https://southdenver.com/privacy-policy/(last visited date).

2022 to January 5, 2022.[4]   During this time, the unauthorized third party had access to the personally identifiable information ("PII") and protected health information (PHI") of the patients (collectively, "Private Information") maintained by SDCA (the "Data Breach").[5]

4. The breach has been reported to the HHS' Office for Civil Rights as affecting up to 287,652 individuals.[6]

5. According to the Federal Trade Commission ("FTC"), PII is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual."[7] PHI is deemed private under the Healthcare Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*, as well as multiple state statutes.

6. Despite SDCA's investigation finding that the "hackers accessed certain files stored on its systems, some of which contained patients' personal and protected health information including patient names along with one or more of the following types of information: dates of birth, Social Security numbers, drivers' license numbers, patient account numbers, health insurance information, and clinical information such as physician names, dates and types of

---

[4]   *See*   https://www.hipaajournal.com/south-denver-cardiology-associates-confirms-data-breach-affecting-287000-patients/ (last visited date).

[5] *See id*.

[6] *See id*.

[7] *See Federal Trade Commission Privacy Impact Assessment: Redress Enforcement Database (RED)* at 3, n.3, FTC (June 2019), https://www.ftc.gov/system/files/attachments/privacy-impact-assessments/redress_enforcement_database_red_privacy_impact_assessment_june_2019.pdf.

service, and diagnoses" had taken place between January 2, 2022 to January 5, 2022, SDCA did not notify patients of the breach until early March 2022.[8]

7.     Defendant's failure to ensure that its services and information were adequately secure fell far short of its legal obligations and Plaintiffs' and Class Members' reasonable expectations for data privacy, jeopardized the security of their Private Information, violated applicable data privacy laws, and has put Plaintiffs and Class Members at serious risk of fraud and identity theft.

8.     SDCA, a for profit company, failed to disclose that its data systems were not secure and, thus, vulnerable to attack.  Had this been disclosed, SDCA would have been unable to continue obtaining business from patients and would have been forced to adopt and invest in reasonable data security measures and comply with the law. SDCA promised to protect the Private Information of patients but chose to ignore this promise and the existing law by skimping on the security of its data systems.

9.     Plaintiffs bring this class action alleging that Defendant's conduct, as described more fully herein, caused Plaintiffs' and Class Members' Private Information to be exposed and stolen because of the failure of Defendant to safeguard and protect their sensitive information. Plaintiffs seek damages, and injunctive and other relief, on behalf of themselves and similarly situated consumers.

---

[8]   *See*  https://www.hipaajournal.com/south-denver-cardiology-associates-confirms-data-breach-affecting-287000-patients/ (last visited date).

## PARTIES

10.     Plaintiff Robert Lamb is a resident of Colorado.  Mr. Lamb received a notice letter from SDCA dated March 2, 2022, stating that his Private Information may have been compromised by the Data Breach.

11.     Plaintiff Marilyn Lamb is a resident of Colorado.  Ms. Lamb received a notice letter from SDCA dated March 2, 2022, stating that her Private Information may have been compromised by the Data Breach.

12.     Defendant South Denver Cardiology Associates, P.C. is a Colorado corporation with its principal place of business at 1000 Southpark Drive, Littleton, Colorado 80120.

## JURISDICTION

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over SDCA because it is headquartered in Colorado, is authorized to and conducts business in Colorado, has specifically marketed, advertised, and made substantial revenue in Colorado, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, revenue, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

15.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, has intentionally availed itself of the laws and markets within this District through its promotion, marketing, and business activities in this District, and a significant portion of the facts and circumstances giving rise to Plaintiffs' Complaint occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

### A.     The Data Breach

16.     On March 4, 2022, SDCA announced that "[o]n January 4, 2022, we identified unusual activity within our computer network. We immediately initiated our incident response process, which included taking steps to secure the network and shutting off select computer systems. We also began an investigation with the assistance of a computer forensic firm and notified law enforcement."[9]

17.     SDCA also stated that its own "investigation determined that an unauthorized person accessed our network between January 2, 2022 and January 5, 2022, and, during that time, accessed certain files stored on our systems."[10]

18.     It took SDCA nearly 2 months to notify those affected by the Data Breach, depriving Plaintiffs and Class Members of the ability to adequately mitigate any fraud or losses during this time.  As a result of Defendant's delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiffs and Class Members has been driven even higher.

---

[9]   *See*  https://southdenver.com/wp-content/uploads/2022/03/SDCA_Substitute-Notice.pdf  (last accessed date).

[10]  *Id.*

19.    The Data Breach occurred after an attacker accessed systems operated by SDCA which contained "patient information, which may have included patients' names, dates of birth, Social Security numbers and/or drivers' license numbers, patient account numbers, health insurance information, and clinical information, such as physician names, dates and types of service, and diagnoses."[11]

20.    Such a hack was foreseeable due to the vast trove of valuable personal information on its patients contained therein and a number of laws that required SDCA to protect it. In fact, SDCA admitted that "[e]vents of this nature are affecting an increasing number of companies in the U.S. and around the world."[12]

21.    So far, the Data Breach has potentially affected 287,652 patients.[13]

**B.    SDCA's Privacy Policies**

22.    Defendant promised to protect the Private Information and other data of patients, stating that "South Denver Cardiology Associates PC is committed to respecting and protecting your privacy…We take the issue of privacy very seriously and value the trust you place in us each time you use our services."[14]

---

[11] *Id.*

[12] *Id.*

[13] *See*            https://www.scmagazine.com/analysis/incident-response/south-denver-cardiology-cyberattack-data-access-impacts-287k-patients (last accessed date).

[14] *See* https://southdenver.com/privacy-policy/ (last visited date).

23.     SDCA also promises not to share Private Information "with any organization for any purpose."[15]

24.     In its notice letter to patients, SDCA again emphasized its commitment to protecting its patients' Private Information, stating "South Denver Cardiology Associates is committed to protecting the security and privacy of our patients' information."[16]

### C.      SDCA Failed to Comply with Industry and Regulatory Standards

25.     Because of the value of PII and PHI to hackers and identity thieves, companies in the business of storing, maintaining, and securing Private Information, such as SDCA, have been identified as being particularly vulnerable to cyber-attacks. Cybersecurity firms have promulgated a series of best practices that, at minimum, should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.[17]

26.     Further, federal and state governments have likewise established security standards and issued recommendations to diminish data breaches and the resulting harm to consumers and financial institutions.

---

[15] *Id.*

[16] *See* https://southdenver.com/wp-content/uploads/2022/03/SDCA_Substitute-Notice.pdf (last visited date)

[17] *See White Paper: Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, Inc. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security/.

27.     SDCA was prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. § 45) from engaging in unfair or deceptive acts or practices in or affecting commerce. The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

28.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

29.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

30.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

31.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

32.     SDCA also had a duty to safeguard Plaintiffs' and class members' PHI under HIPAA and its implementing regulations, 45 C.F.R. §§ 160, *et seq*., which establish privacy and security standards for certain health organizations. SDCA is a "health care provider" subject to HIPAA because it receives, maintains, or transmits its patients' PHI.[18] "PHI" includes, in relevant part, individually identifiable health information relating to the provision of health care.

33.     For example, HIPAA required SDCA to ensure the confidentiality of the electronic PHI it received and maintained by protecting against reasonably anticipated threats to its integrity. *Id*. § 160.306(a). To do so, SDCA was required to implement reasonable and appropriate security measures to mitigate the risk of unauthorized access to its patients' electronic personal health information, including by encrypting certain data where appropriate.[19]

34.     SDCA failed to properly implement these basic data security practices. SDCA's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**D.    Plaintiffs' Experiences**

35.     Plaintiffs Robert Lamb and Marilyn Lamb learned of the Data Breach via a notice

---

[18] 45 C.F.R. § 160.103

[19] *See id.* §§ 164.308 (administrative safeguards), 164.312 (technical safeguards).

letter from SDCA dated March 4, 2022.

36.     In the letter, Defendant stated that, "[o]ur investigation further determined that some of [the compromised] files contained your information, which may have included your name, date of birth, Social Security number and/or driver's license number, patient account number, health insurance information, and clinical information, such as physician name, date and type of service, and diagnosis."

37.     As a result of learning of the Data Breach, Plaintiffs spent time dealing with the consequences of the Data Breach, which includes, but is not limited to: checking and verifying credit agency reports; cancelling credit cards and ordering new cards; closing bank accounts and opening new accounts; changing account numbers on pensions; changing all direct deposit account numbers; checking and verifying Social Security accounts; and checking and verifying home mortgage account.

38.     Plaintiffs suffered actual injury in the form of damages to and diminution of the value of Private Information—a form of intangible property that Plaintiffs entrusted to Defendant for the purpose of education, which was compromised in and as a result of the Data Breach.

39.     Plaintiffs have suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Plaintiffs otherwise would have spent performing other activities, such as work and/or leisurely activities for the enjoyment of life.

40.     Plaintiffs have suffered imminent and impending injury arising from the disclosure of their Private Information and for the substantially increased risk of fraud, identity theft, and misuse resulting from Private Information being placed in the hands of unauthorized third parties and criminals.  In addition, Plaintiffs have noticed a substantial increase in unwanted spam

telephone calls since the Data Breach.

41.     Plaintiffs have a continued interest in ensuring that Private Information, which remains backed up in Defendant's possession, is protected and safeguarded from further and future breaches.

### E.     Plaintiffs' and Class Members' Suffered Damages

42.     Defendant had a duty to keep Private Information confidential and to protect it from unauthorized access and disclosures. Plaintiffs and Class Members provided their Private Information to SDCA with the understanding that SDCA and any business partners to whom SDCA disclosed Private Information would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

43.     The Data Breach creates a heightened security concern for patients of SDCA because their Private Information, including Social Security numbers, medical records and other sensitive financial and personal data was included.

44.     Medical privacy is among the most important tenets of American healthcare. Patients must be able to trust their physicians, insurers, and pharmacies to protect their medical information from improper disclosure including, but not limited to, their health conditions and courses of treatment.  Indeed, numerous state and federal laws require this.

45.     What's more, it took at least two months for individuals who were affected to find that out.

46.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201.  The FTC describes "identifying information" as "any name or number that

may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

47.     Theft of Social Security numbers creates a particularly alarming situation for victims because those numbers cannot easily be replaced.   Indeed, the Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive fraud:

> A dishonest person who has your Social Security number can use it
> to get other personal information about you. Identity thieves can use
> your number and your good credit to apply for more credit in your
> name.   Then, they use the credit cards and don't pay the bills, it
> damages your credit.   You may not find out that someone is using
> your number until you're turned down for credit, or you begin to get
> calls from unknown creditors demanding payment for items you
> never bought.  Someone illegally using your Social Security number
> and assuming your identity can cause a lot of problems.[20]

48.     It is also difficult to obtain a new Social Security number.  A breach victim would have to demonstrate ongoing harm from misuse of her Social Security number, and a new Social Security number will not be provided until after the harm has already been suffered by the victim.

---

[20] *See Identity Theft and Your Social Security Number*, Social Security Administration, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed date).

49.     Given the highly sensitive nature of Social Security numbers, theft of these numbers in combination with other personally identifying information may cause damage to victims for years.

50.     Defendant had a duty to keep Private Information confidential and to protect it from unauthorized disclosures.  Plaintiffs and Class Members provided their Private Information to SDCA with the understanding that SDCA and any business partners to whom SDCA disclosed Private Information would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

51.     Defendant's data security obligations were particularly important given the substantial increases in data breaches in recent years, which are widely known to the public and to anyone in SDCA's industry.

52.     Data breaches are not new.  These types of attacks should be anticipated by companies that store sensitive and personally identifying information, and these companies must ensure that data privacy and security is adequate to protect against and prevent known attacks. Indeed, many health care companies have been subject to numerous data security incidents, such as Anthem and Premera Blue Cross.

53.     It is well known among companies that store sensitive personally identifying information that sensitive information is valuable and frequently targeted by criminals.

54.     Identify theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

55.     There may be a time lag between when the harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used.  According, to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

56.     With access to an individual's Private Information, criminals can commit all manners of fraud, including obtaining a driver's license or official identification card in the victim's name but with the thief's picture, using the victim's name and Social Security number to obtain government benefits, or filing a fraudulent tax return using the victim's information.

57.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years.  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen Social Security numbers and other Private Information directly on various illegal websites making the information publicly available, often for a price.

---

[21] *See Report to Congressional Requesters*, U.S. Government Accountability Office, (June 2007), http://www.gao.gov/new.items/d07737.pdf. (last visited date).

58.     Moreover, a study found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[22]

59.     SDCA is, and at all relevant times has been, aware that the Private Information it handles and stores in connection with providing healthcare services is highly sensitive. As a company that handles highly sensitive and identifying medical information, SDCA is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

60.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable data breaches, Defendant failed to take reasonable steps to adequately protect its systems from being breached leaving its patients exposed to the risk of fraud and identity theft.

61.     As a result of the events detailed herein, Plaintiffs and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; disclosure of their need for special education; disclosure of financial status; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Private Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and

---

[22] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET, (Mar. 3, 2010, 5:00 a.m.), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims; *see* Annie Nova, *Here's how to avoid medical identity theft*, CNBC, (June 7, 2019 11:15 a.m.), https://www.cnbc.com/2019/06/07/how-to-avoid-medical-identity-theft.html. (last visited date).

identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Private Information.

62.     As a result of the Data Breach, Plaintiffs' and Class Members' privacy has been invaded, their Private Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

63.     Had Defendant remedied the deficiencies in their data security systems and adopted security measures recommended by experts in the field, they would have prevented the intrusions into its systems and, ultimately, the theft of Plaintiffs' and Class Members' Private Information.

64.     As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

65.     The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, twenty-nine percent spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[23]

---

[23] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, *available at*: https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited date).

66.     In the Data Breach Notice, SDCA made an offer of identity monitoring service to patients through IDX including "one year of credit and CyberScan monitoring, a $1,000,000 insurance reimbursement policy, and fully managed identity theft recovery services." However, SDCA's offer fails to address the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, medical and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information.

67.     Defendant's failure to adequately protect Plaintiffs' and Class Members' Private Information has resulted in Plaintiffs and Class Members having to undertake these tasks, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money - while Defendant sits by and does nothing to assist those affected by the incident.

68.     SDCA's offer of 12 months of identity monitoring to Plaintiffs and Class Members is woefully inadequate. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is acquired and when it is used. Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Private Information) - it does not prevent identity theft.[24]

69.     Plaintiffs and Class Members have been damaged in several other ways as well. All Plaintiffs and Class Members have been exposed to an impending, imminent, and ongoing

---

[24] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html (last visited October 31, 2022).

increased risk of fraud, identity theft, and other misuse of their Private Information. Plaintiffs and Class Members must now and indefinitely closely monitor their financial and other accounts to guard against fraud. This is a burdensome and time-consuming activity. Certain Plaintiffs and Class Members may have also purchased credit monitoring and other identity protection services, purchased credit reports, placed credit freezes and fraud alerts on their credit reports, and spent time investigating and disputing fraudulent or suspicious activity on their accounts. Plaintiffs and Class Members also suffered a loss of the inherent value of their Private Information.

70.     Private Information stolen in the Data Breach can be misused on its own, or it can be combined with personal information from other sources such as publicly available information, social media, etc. to create a package of information capable of being used to commit further identity theft. Thieves can also use the stolen Private Information to send spear-phishing emails to Class Members to trick them into revealing sensitive information. Lulled by a false sense of trust and familiarity from a seemingly valid sender (for example Wells Fargo, Amazon, or a government entity), the individual agrees to provide sensitive information requested in the email, such as login credentials, account numbers, and the like.

71.     As a result of Defendant's failures to prevent the Data Breach, Plaintiffs and Class Members have suffered, will suffer, and are at increased risk of suffering:

a.     The compromise, publication, theft and/or unauthorized use of their Private Information;

b.     Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

      c.     Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

      d.     The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in their possession;

      e.     Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and

      f.     Anxiety and distress resulting from fear of misuse of their Private Information.

72.     In addition to a remedy for the economic harm, Plaintiffs and Class Members maintain an undeniable interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all others similarly situated.

74.     The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**Nationwide Class**:

**All persons in the United States whose Private Information was exposed to unauthorized third parties as a result of the data**

> **breach of South Denver Cardiology Associates, P.C. that occurred in January 2022.**

In the alternative to the Nationwide Class, Plaintiffs seek certification of the following state Sub-Class:

> **Colorado Sub-Class**:
>
> **All residents of Colorado whose Private Information was exposed to unauthorized third parties as a result of the data breach of South Denver Cardiology Associates, P.C. that occurred in January 2022.**

75.     Plaintiffs reserve the right to modify, change, or expand the Class definitions, including proposing additional subclasses, based on discovery and further investigation.

76.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiffs and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

77.     The Classes meet all of the criteria required by Federal Rule of Civil Procedure 23(a).

78.     **Numerosity:** The Class Members are so numerous that joinder of all members is impracticable.  Though the exact number and identities of Class Members are unknown at this time, it appears that the membership of the Classes are in the tens of thousands. The identities of Class members are also ascertainable through Defendant's records.

79.     **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.      Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

b.      Whether Defendant failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

c.      Whether and when Defendant actually learned of the Data Breach;

d.      Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

e.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.      Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g.      Whether Defendant was negligent or negligent *per se*;

h.      Whether Plaintiffs and Class Members are entitled to relief from Defendant as a result of Defendant's misconduct, and if so, in what amounts; and

i.      Whether Class Members are entitled to injunctive and/or declaratory relief to address the imminent and ongoing harm faced as a result of the Data Breach.

80.     **Typicality:** Plaintiffs' claims are typical of the claims of the Classes they seek to represent, in that the named Plaintiffs and all members of the proposed Classes have suffered

similar injuries as a result of the same misconduct alleged herein.  Plaintiffs have no interests adverse to the interests of the other members of the Classes.

81.    **Adequacy:**  Plaintiffs will fairly and adequately protect the interests of the Classes and have retained attorneys well experienced in class actions and complex litigation as their counsel, including cases alleging breach of privacy and negligence claims arising from corporate misconduct.

82.    The Classes also satisfy the criteria for certification under Federal Rule of Civil Procedure 23(b) and 23(c). Among other things, Plaintiffs aver that the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; that Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Classes as a whole; that questions of law or fact common to the Classes predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiffs also aver that certification of one or more subclasses or issues may be appropriate for certification under Federal Rule of Civil Procedure 23(c).  Plaintiffs further state that the interests of judicial economy will be

served by concentrating litigation concerning these claims in this Court, and that the management of the Classes will not be difficult.

83.    Plaintiffs and other members of the Classes have suffered damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, Defendant's unlawful and improper conduct shall, in large measure, not go remedied.  Absent a class action, the members of the Classes will not be able to effectively litigate these claims and will suffer further losses.

## CLAIMS FOR RELIEF

### COUNT I
### Negligence

84.    Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

85.    Plaintiffs bring this claim on behalf of the Class, or in the alternative, the Colorado Subclass.

86.    SDCA negligently represented that it was "committed to respecting and protecting your privacy" despite leaving Plaintiffs' and the Classes' Private Information exposed to unauthorized access.

87.    Defendant was entrusted with, stored, and otherwise had access to the Private Information of Plaintiffs and Class Members.

88.    Defendant knew, or should have known, of the risks inherent to storing the Private Information of Plaintiffs and Class Members, and to not ensuring that its products and services were secure. These risks were reasonably foreseeable to Defendant.

89.    Defendant owed duties of care to Plaintiffs and Class Members whose Private Information had been entrusted to them.

90.     Further, after discovering that cybercriminals had infiltrated its systems, SDCA failed to timely notify patients, consequently, causing notice to Plaintiffs and Class and Sub-Class Members to be untimely and insufficient to identify what Private Information had been exposed.

91.     SDCA had additional duties to safeguard Plaintiffs' and Class and Sub-Class Members' data through the following statutes and regulations:

        a.     Pursuant to the FTC Act, 15 U.S.C. § 45, SDCA had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class and Sub-Class Members' Private Information.

        b.     Pursuant to HIPAA, 42 U.S.C. § 1320d, SDCA had a duty to securely store and maintain the Plaintiffs' and Class and Sub-Class Members' PHI.

92.     SDCA's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because SDCA is bound by industry standards to protect confidential Private Information.

93.     SDCA breached its duties, and thus was negligent, by failing to use reasonable measures to protect the Plaintiffs' and Class and Sub-Class Members' Private Information. The specific negligent acts and omissions committed by SDCA include, but are not limited to, the following:

        a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class and Sub-Class Members' Private Information;

        b.     Failing to adequately monitor the security of its networks and systems;

        c.     Allowing unauthorized access to and exfiltration of Plaintiffs' and Class and Sub-Class Members' Private Information;

d.      Failing to timely detect that Plaintiffs' and Class and Sub-Class Members' Private Information had been compromised;

e.      Failing to provide timely notice that Plaintiffs' and Class and Sub-Class Members' Private Information had been compromised so those at risk could take timely and appropriate steps to mitigate the potential for identity theft and other damages; and

f.      Failing to provide adequate notice of what Private Information had been compromised so that Plaintiffs and Class and Sub-Class Members at risk could take timely and appropriate steps to mitigate the potential for identify theft and other damages.

94.     It was foreseeable to SDCA that its failure to use reasonable measures to protect Plaintiffs' and Class and Sub-Class Members' Private Information would result in injury to Plaintiffs and Class and Sub-Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of ransomware attacks and data breaches.

95.     It was additionally foreseeable to SDCA that failure to timely and adequately provide notice of the Data Breach would result in Plaintiffs and Class and Sub-Class Members not being afforded the ability to timely safeguard their identities.

96.     Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate data security in connection to its services. Defendant had a duty to safeguard Plaintiffs' and Class Members' Private Information and to ensure that their systems and products adequately protected the Private Information.

97.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

98.     Defendant acted with wanton disregard for the security of Plaintiffs' and Class Members' Private Information.

99.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

100.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

101.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members face an increased risk of future harm.

102.    Plaintiffs are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

103.    Plaintiffs are also entitled to injunctive relief requiring SDCA to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class members, and any other relief this Court deems just and proper.

104.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Negligence Per Se

105.    Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

106.    Plaintiffs bring this claim on behalf of the Class, or in the alternative, the Colorado Sub-Class.

107.    Pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, Defendant had a duty to provide adequate data security practices to safeguard Plaintiffs' and Class Members' Private Information.

108.    Pursuant to HIPAA, 42 U.S.C. § 1320d, SDCA had a duty to securely store and maintain the Plaintiffs' and Class and Sub-Class Members' PHI.

109.    Pursuant to other state and federal laws requiring the confidentiality of Private Information, including, but not limited to, the FTC Act and HIPAA, among other laws, Defendant had a duty to implement reasonably safeguards to protect Plaintiffs' and Class Members' Private Information.

110.     Defendant breached its duties to Plaintiffs and Class Members under the FTC Act and HIPAA, among other laws, by failing to provide fair, reasonable, or adequate data security in order to safeguard Plaintiffs' and Class Members' Private Information.

111.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

112.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

113.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that its breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

114.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members face an increased risk of future harm.

115.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## <u>COUNT III</u>
### Breach of Contract

116.     Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

117.     Plaintiffs bring this claim on behalf of the Class, or in the alternative, the Colorado Sub-Class.

118.     Plaintiffs and Class Members provided their Private Information to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that Private Information from unauthorized disclosure.

119.     Plaintiffs and Class Members are parties to contracts with SDCA. Under the circumstances, recognition of a right to performance by Plaintiffs and  Class Members is appropriate to effectuate the intentions of the parties to these contracts. One or more of the parties to these contracts intended to give Plaintiffs and  Class Members the benefit of the performance promised in the contracts.

120.     Defendant breached these agreements, which directly and/or proximately caused Plaintiffs and  Class Members to suffer substantial damages.

121.     Accordingly, Plaintiffs and Class Members are entitled to damages, restitution, disgorgement of profits and other relief in an amount to be proven at trial.

<u>COUNT IV</u>
**Colorado Security Breach Notification Act,**
**Colo. Rev. Stat. §§ 6-1-716,** *et seq*.

122.     Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

123.     Plaintiffs bring this claim on behalf of the Colorado Sub-Class.

124.     SDCA is a business that owns or licenses computerized data that includes Personal Information as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

125.     SDCA is required to accurately notify Colorado Plaintiffs and Colorado Sub-Class Members if it becomes aware of a breach of its data security program in the most expedient time possible and without unreasonable delay under Colo. Rev. Stat. § 6-1-716(2).

126.     Because SDCA was aware of a breach of its security system, it had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Colo. Rev. Stat. § 6-1-716(2).

127.     By failing to disclose the Data Breach in a timely and accurate manner, SDCA violated Colo. Rev. Stat. § 6-1-716(2).

128.     As a direct and proximate result of SDCA's violations of Colo. Rev. Stat. § 6-1-716(2), Plaintiffs and Colorado Sub-Class Members suffered damages, as described above.

129.     Plaintiffs and Colorado Sub-Class Members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

<u>**COUNT X**</u>
**Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101, *et seq.***

130.     Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

131.     Plaintiffs bring this claim on behalf of the Colorado Sub-Class.

132.     SDCA is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

133.     Plaintiffs and Colorado Sub-Class Members, as well as the general public, are actual or potential consumers of the services offered by SDCA or successors in interest to actual consumers.

134.     SDCA engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to:

a.     Knowingly making a false representation as to the characteristics of services;

b.      Representing that services are of a particular standard, quality, or grade, though SDCA knew or should have known that there were or another; and

c.      Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

d.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Colorado Sub-Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

e.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the Data Breach.

f.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Colorado Sub-Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, among other laws, which was a direct and proximate cause of the Data Breach; and

g.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Colorado Sub-Class members' Private Information.

135.    SDCA also violated Colo. Rev. Stat. § 6-1-105(1) by committing the acts described throughout.

136.    SDCA's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of SDCA's data security and ability to protect the confidentiality of consumers' Private Information.

137.    SDCA's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiffs and the Colorado Sub-Class Members, that their Private Information was not exposed and misled Plaintiffs and the Colorado Sub-Class Members into believing they did not need to take actions to secure their identities.

138.    SDCA intended to mislead Plaintiffs and Colorado Sub-Class Members and induce them to rely on its misrepresentations and omissions.

139.    Had SDCA disclosed to Plaintiffs and Sub-Class Members that its data systems were not secure and, thus, vulnerable to attack, SDCA would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, SDCA was trusted with sensitive and valuable Private Information regarding an untold number of patients, including Plaintiffs and the Class and Colorado Sub-Class. SDCA accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because SDCA held itself out as maintaining a secure platform for Private Information, Plaintiffs and Class and Colorado Sub-Class Members acted reasonably in relying on SDCA's misrepresentations and omissions, the truth of which they could not have discovered.

140.    SDCA acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Sub-Class Members' rights.

141.    As a direct and proximate result of SDCA's deceptive trade practices, Colorado Sub-Class members suffered injuries to their legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

142.     SDCA's deceptive trade practices significantly impact the public, as numerous Colorado citizens' Private Information, including medical information, was disclosed.

143.     Plaintiffs and Colorado Sub-Class Members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for SDCA's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Classes, pray for relief as follows:

A.     For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 against Defendant, appointing Plaintiffs as Class Representative of the Class and/or Sub-Classes;

B.     Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.     Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Classes have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.     Prejudgment interest to the extent allowed by the law;

E.     Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

DATED:  April 18, 2023

**IRWIN FRALEY, PLLC**

By:   _/s/ Brad R. Irwin_
               Brad R. Irwin

Brad R. Irwin, Esq.
6377 S. Revere Parkway, Suite 400
Centennial, CO 80111
Telephone: 309-999-9000
Facsimile:  303-999-9001
Email: _birwin@coloradolawyers.com_

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King, Esq.*
Matthew B. George, Esq.*
Blair E. Reed, Esq.*
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
Email:   _lking@kaplanfox.com_
        _mgeorge@kaplanfox.com_
        _breed@kaplanfox.com_

**KAPLAN FOX & KILSHEIMER LLP** Joel B.
Strauss, Esq.*
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
Email:   _jstrauss@kaplanfox.com_

_Attorneys for Plaintiffs and the Proposed Class_
* U.S. District Court Bar applications forthcoming